1-08-3074 ABF Freight Systems v. Conklin Counsel, you may proceed. Thank you. Please, the Court, Counsel. My name is John Campbell. I am here on behalf of ABF Freight, the employer in this case. We sought an appeal of the last Circuit Court decision, but in substance, we believe the error in this case lies with the first Circuit Court decision of Judge Novak. As this Court is well aware, this is a case where an individual had an accepted injury, however, subsequently suffered a motorcycle crash. A unanimous Commission panel evaluated all evidence and determined that that motorcycle crash was so severe that it warranted the suspension of benefits and discharged my client of liability. I'm here today to argue that Judge Novak erred in two counts in her written decision. I would like to cite specifically in her decision what I believe is the cornerstone of the basis for her ruling, where she says, and this is in the record on page 654, turning to the evidence in the case, the medical evidence uniformly supports a finding that the motorcycle accident aggravated, but did not change, the nature of the low back injury. I submit the error in that statement lies with two counterpoints, and it is the testimony on cross-exam of two physicians, Dr. Bernstein, page 167 of the record, and Dr. Liestema, page 145 and 146, where both physicians on cross-exam have the opportunity to review the emergency room records from that motorcycle crash and specifically state that there was a worsening of that low back condition, that low back condition changed materially on April 14th when this gentleman crashed on a motorcycle, unrelated to the original work injury. All right. You said you threw two things in there, worsening and changed materially. Which is it? And who said which? I think it's both. I don't know that I need to necessarily select either or. What did they say? Give us the quote. I'm sorry? Give us the quote. What did they say? From the physicians? Yes. Okay. Tell us what you got there. I do. Read it to us. Okay. I have it on the inside of my brief. Do you have the record in front of you? I do. I have it tagged. I have to find the specific quote. I know Dr. Bernstein, from memory, says it's worse. I know that. It may take me a moment to find this quote, though. This is page 22 of the transcript. I don't have the pagination from your record, so forgive me. It is the bottom of page 22 of what is paginated at the transcript of the deposition. And the question of the doctor is, does it appear that the patient's low back and planks had increased significantly prior to the motorcycle accident? Forgive me, that's not it. Well, if you want to continue on, perhaps you can find it. I will. I'm struggling with finding the specific quote. I do recall from memory, and I'm confident in saying that the doctor does state that the condition is worse. I do recall that. I can't recall, and I'm not finding it in the record. I apologize. I didn't have a specific quote from Dr. Bernstein tagged in this large record. So forgive me. But with regard to that general point, I believe it is sufficient. With regard to the statements made by these physicians and acknowledgments and their cross-exam, both Liestema and Bernstein, it is sufficient evidence to support the original finding of the commission that this motorcycle crash was so severe that the liability for the company as a result of this accident, with regard to the low back, is no longer the liability of ABF3. I know my opponent in his brief cites a litany of Dr. Liestema's treatment records, suggesting that the low back was the primary focus of the treatment. This is page 4 of my opponent's brief. I submit to you, if we look at these individual records from Dr. Liestema, and this is in the record, page 315, as well as 488, Dr. Liestema is focusing his treatment on the shoulder pain. His only reference to the low back is acknowledging that this is a gentleman who had been treating with Dr. Bernstein for low back problems, as it relates to a surgery that has nothing to do with this case. This gentleman's back surgery was before any of the accidents, and he had just recently been released back to work in December of 2001. So all of this happened after that. We have an individual that doesn't have a full release even from his back surgery. He had scheduled visits, what Dr. Bernstein said, for May. He hadn't even gotten there yet for a full release from his back surgery. He had been back to work, and then he suffers, by all counts, a modest work injury where he falls to his feet and onto his buttocks. He does complain of low back pain when he goes to the ER at first, but all of his follow-up treatment with his treating doctor, Dr. Liestema, focuses on shoulder complaints. In fact, the reference, or I'm sorry, the referral is to a shoulder specialist, Dr. DeVries. On the evidence deposition, Liestema specifically opined on the issue of the motorcycle accident, correct? He does, and I know, on direct, there's no question. These doctors make a very persuasive argument for my opponent that there's a commingling here. There's problems for both. There's problems for both. And the motorcycle accident was an additive factor in nature, but it was not sufficiently traumatic to remove the work injury from the equation. All right. And so the commission determines that the subsequent motorcycle accident did not sever the chain of causation. So why is that against the manifest weight? Well, I believe the manifest weight of the evidence argument is actually upon my side. And I believe that Dr. Kovach reversed the commission's decision on the manifest weight of the evidence. Well, here, Mark Levin was your doctor, wasn't he? There were two doctors. Mark Levin and Dr. Kovach. The answer is correct, yes. What did he say about the motorcycle accident? He said it was an aggravation. Yeah, mild aggravation, I think is the word he used. Where is the evidence, any medical evidence, in this record that the motorcycle accident was so severe as to cause a severance of the causal relationship between his back condition and the injury at work? Two things. One, and I will say it again in summary, the cross-exam testimony of Leastman and Bernstein, but also looking directly at the medical evidence itself from the five-day inpatient hospital stay at St. Mary's Hospital. What they cite, a low back is the primary cause of pain, an individual who refused to leave due to low back pain, and an individual who is now in a Morphine pump and can no longer even ride that motorcycle because of this motorcycle crash. Bernstein finished his testimony by saying that nothing in the hospital records or in Leastman's treatment notes caused him to change his opinion that the work accident aggravated Clement's lumbar spine condition. Yes, I understand. He states that in summary upon redirect from my opponent. What I am citing to is his cross-exam. But I know, Your Honor, you looked a bit quizzical when I said that the manifest weight of the evidence standard is upon my opponent. The reason being, this original appeal, after a unanimous commission affirmed an arbitrator's decision that there is evidence. The accident broke the causal connection? Right. Okay. Then it was Mr. Capron's appeal on behalf of Petitioner, and Judge Novak reversed against and in the face of the manifest weight of the evidence standard. And it got remanded for new hearing. Right. And I appealed that decision, and Judge Gardner didn't really address the merits of the case before it got up here. He simply affirmed summarily the commission remand decision. So I am focusing my efforts and argument on Judge Novak, which is the last substantive I'm sorry? What are you focusing on? Well, You should be focusing on the commission's findings. Okay. Well, I want to be careful because there's two commission findings. And I am The one you're appealing from, let's put it that way. I'm sorry? Let's focus on the one that you're appealing from. Okay. The one I am appealing from is at the compelling or the remand of Judge Novak. Right. And they found that the causal connection was not severed by the accident. Are we clear on that? We are absolutely clear on that. So why is it erroneous? Well, it's erroneous for the reasons I had already started stating. But more importantly, I think it is for the purview of this Court to determine whether Judge Novak made an erroneous reversal on the manifest weight of the evidence standard.  I think it is for the purview of this Court to determine whether Judge Novak made an erroneous reversal on the manifest weight of the evidence standard for my client when the error that I'm arguing occurred is from Judge Novak's appeal. I couldn't. I actually tried. I learned a valuable lesson when I was here a few years ago. I appealed Judge Novak's decision. But because part of it was not final. Right. Never made it back. I consolidated both of those cases. Did the motorcycle accident in any way change the condition? He suffered from low back problems before. Right. And he suffered from low back problems after. Right? Yeah, absolutely. Okay. Now, if the employment injury was even a contributing cause to the condition after the motorcycle accident, it's compensable. It's just that simple. The Supreme Court said so in International Harvester. Okay. All it has to be is a contributing cause. Okay. What we don't have in this case, unlike some of the other cases that both parties cited in the briefs, is a definable diagnosis in terms of a new herniated disc or a tear or a fracture. That's right. What we don't have, that's true. But we do have demonstrative evidence that the condition is worse. I compared, unlike the Vogel case, which was heavily cited, I used a comparison to this Battola case from 1991, which I think is very similar and consistent with the argument I'm trying to make, which is you can have low back complaints that are relatively modest. And, again, this is an appreciation of the totality of medical evidence in this case. The commission ultimately drew the conclusion. He wasn't even treating actively for a low back pain after his work injury. He was treating for the shoulder and was sent to a specialist for his shoulder. Then there was no question he was treating for low back problems. He's an inpatient in an ER and has a morphing pump out for his low back and is decidedly more debilitated. So why didn't you get one of your doctors to say so? I'm sorry? Why didn't you get one of your doctors to say so? It was my impression upon taking the deposition of Bernstein and Liesterman when they said the condition was worse, it was sufficient to settle the liability in this case. The commission did agree with me on the first go-around. Worse doesn't mean intervening cause. Worse doesn't. You've got to break the causal connection. And just because it's worse doesn't mean there's no recovery. The question is, is the work-related accident still a contributing cause to the end condition? The truth is, I understand, Dr. Bernstein, ultimately that concludes, well, it is still a contributing cause. But that can't be defined by any medical measure of objective diagnosis. We don't have an x-ray or an MRI to show any change. And I'm submitting to you that this is not unlike this Datola case, where an individual is actually not released from care, had a knee injury, and then has a non-work-related event to his knee that makes it demonstrably worse, and that was found to be sufficient to be an intervening event. I think it's very similar to the Datola case, and a distinction can be drawn from the oft-cited Vogel case in our briefs. In Vogel, we have the treater says it's just a setback. This is the Vogel case. The treating doctor, Dr. Bowery, says, this is just a setback, these three car accidents that the petitioner had. It didn't really affect the fusion. Dr. Skolecki, the IME doctor in Vogel, says, yeah, you know what, it aggravated it a little bit, but it didn't change the nature of the original injury of the fusion. And that's why Vogel is different from the case we have. I have another argument here, too, as I understand it. You're arguing under section 19D of the Act, the commission made its discretion and in this case should have reduced or suspended the compensation of the claimant because he was persisting in an injurious practice tending to imperil or delay recovery, i.e., the motorcycle riding. Right. So the commission obviously found that he was not. And so what is your understanding of the standard on appeal on that issue? What is the standard of review on that issue? It would again be manifest weight of the evidence. Is it manifest weight or is it an abuse of discretion on the 19D issue? It might be an abuse of discretion. Well, I want to be careful to call it an abuse of discretion because what I think the commission ultimately did in the first decision on March 17th of 05, they looked at my argument in the alternative and just didn't address it because I was successful in my original argument of the suspension of benefits due to an intervening action. So they didn't address it. Judge Novak then took the commission decision and thought, Mr. Campbell didn't address his 19D argument, so he doesn't get to raise it here. So she's summarily disposed of it. I don't think she was. Did the commission rule on it on the remand? No, they didn't. They actually didn't allow oral arguments. I think they just issued a decision based on the remand of Judge Novak and awarded some additional TDD benefits and a little bit more medical. Well, let's talk about the merits. How do we get to that point? Well, on that, on the 19D, I do think it is a very viable defense and it should be at minimum remanded for that purpose because we have an individual who was released to work, offered work, undisputed, but he wouldn't come to work because he said, I can't drive, I'm on too many drugs. 48 hours later, he's on his heartbeat and he crashes. Well, but let's not confuse the issues. What evidence or testimony is there that that was an injurious practice, merely driving the motorcycle? I'm using Petitioner's own testimony against him here. I think he's caught in a catch-22. He says, I can't come to work that day. That has nothing to do with whether driving a Harley is an injurious practice. Okay. My argument is based on Petitioner's own testimony that he wouldn't come to work because he didn't think he was capable of driving due to the drug intake. And I don't believe he should have the luxury to be able to, on the one hand, refuse to come back to work. By the way, if he was at work, he would never have had a motorcycle crash. He refuses to come to work, and yet when he crashes on his motorcycle, he wants no liability for what he himself has described would be dangerous for him to be driving a vehicle. It's not a Harley. He crashes. I think he's caught in a catch-22. So you're saying that the act of driving a motorcycle in and of itself is an injurious practice, right? When you, if you testify under oath that you shouldn't be driving a vehicle because it's dangerous, because you're on narcotics, and then you do, I think that would lead a lot of triers of fact to find that that is an injurious practice. Absolutely. Right. It just had to be. Thank you for your time, Your Honor. Good morning, Your Honors. May it please the Court, Counsel. My name is Daniel Capron, and I represent the claimant in this case, Ronald Conklin. And as I've divined from the questions thus far, the issue in this case is really a very narrow one. I do want to correct a couple of things that my opponent said that I think are somewhat inaccurate. We have three different periods of Ronald Conklin's life that are under the proverbial microscope here. The first period is the period prior to the work accident. The second period is the period in between the work accident and the motorcycle accident. And then the third period is the period after the motorcycle accident. Now, I think that Mr. Campbell, well-intentioned though he is, overstates my client's low back condition prior to the work accident and understates it following the work accident. Significantly, Dr. Bernstein, who was the surgeon who did the fusion that preexists all of the facts of this particular case, saw Mr. Conklin on November 26th of 2001, at which time Mr. Conklin had no low back pain. He was released to go back to full-duty work on December 4th, 2001, and in fact he did. Now, that standing alone is significant, but during that three-month block of time that ensued in between the return to work in early December and the work injury in early March, Mr. Conklin continued to see his family physician, Dr. Liestma, on not a single one of those visits did he complain of or was treated for low back complaints. So the low back condition pre-work accident is really rather benign and has healed up quite well. The visit that Mr. Campbell is referring to, that Mr. Conklin still had scheduled with Dr. Bernstein, was a routine six-month out visit for the purposes of taking an x-ray to confirm that the fusion was in fact solid. Then we have the work accident. He falls six to seven feet off the hood of his truck, landing onto the balls of his feet and then onto his buttocks in Minnesota. Treatment ensues immediately and it progresses continuously. Now, during this block of time, between the work accident on March 2nd and the motorcycle accident on April 14th, if I heard counsel correctly, he would have that the low back complaints during that block of time petered out after the first couple of visits to the doctor. And that is not, in fact, the case. As a matter of fact, Dr. Liestma testified that during every one of those visits in between the work accident and the motorcycle accident, the low back remained a factor. Most significantly the record affirmatively shows that the claimant was still being treated for the work-related injury to the lower back. Correct. The motorcycle accident occurs and you argue it's an aggravation or exacerbation of that. Correct. That's in essence what you're saying. Exactly. And three days prior to the motorcycle accident, Dr. Liestma was referring Mr. Conklin back to Dr. Bernstein for his persistent low back complaints. So it's simply not accurate to suggest that immediately prior to the motorcycle accident, the low back really wasn't a factor anymore. It was. And the medical records reflect that it was. What is your response to his argument about this injurious practice? It makes an interesting argument that your client, the claimant himself, acknowledged you shouldn't be on any vehicle and then he's driving a motorcycle. It is. And you know what? It was a boneheaded move by Mr. Conklin. It was not gratuitous. As you'll read in the record, he and his wife had a motorcycle business that they were trying to close up. But that's neither here nor there. First thing's first, it is the abuse of discretion standard as it relates to 19D, not manifest weight. And that's the global products case, the smoking case that was recently decided. So the question is, was merely the riding of a motorcycle an injurious practice? I don't think that that appears anywhere in the record. As a matter of fact, it wasn't riding the motorcycle that was injurious. It was getting knocked off the motorcycle by a car, which was certainly not a volitional act on my client's part. Let's break that down a little bit. Not to get too esoteric, but is there a tie-in here? Is riding a motorcycle in and of itself an injurious practice? Well, you know, you can say it's not. He seems to be saying it's a little more subtle than that. Is it an injurious practice in the context of this case where the claimant acknowledges you shouldn't be on any, driving any vehicle? That was my move. Can you remove that from the context of the evidence in this case? It's an excellent question. And although my client's subjective perception that he testified to was that, you know, yeah, I really didn't think I should be driving, if you read the record carefully, at no time in this record does any physician restrict Mr. Conklin from driving or riding a motorcycle. My opponent's argument would be much stronger if, in the face of an overt restriction from one of the physicians that says, absolutely do not drive and especially don't drive motorcycles, he ignored it and he went ahead and did it. That would be a stronger argument, but that's not what we have here. So doesn't it go even beyond that? There's nothing in this record to suggest that the accident that occurred while operating the motorcycle was the operator's fault for being under the influence of pain medication and maybe the crash contributed to the crash. In fact, what little evidence that we do have, Your Honor. That vehicle pulled out. Right. Suggests the opposite. And the civil litigation that ensued, Mr. Conklin was plaintiff, not defendant. So, I mean, what little evidence we have, and we don't have a great deal, he was the victim of an accident, not somebody who caused it.  argues that the commission really didn't address his 19D argument, and I would take exception to that. In the second commission decision, the decision on remand, towards the very end, not in a separate paragraph, but rather buried in a bigger paragraph, the commission says, and I quote, the commission acknowledges the inconsistency between the petitioner's complaints and his motorcycle usage, but does not view this usage as defeating the petitioner's claim for ongoing benefits. But that doesn't have anything to do with his drug condition. That has to do with testimony of two physicians stating they don't understand how he could have even driven a motorcycle in his condition. That's what that refers to. It doesn't have anything to do with his drugs. Well. His back condition. His back condition, correct. You're right, Your Honor. Now, but again, if you invoke the abuse of discretion standard, which I think everybody can agree that that is the standard, it can't be said that the mere act of getting on a motorcycle that one day for a limited purpose and then being involved in an accident that was not his fault, that that somehow removes him from the protections of the act. My opponent cited the Detola case. I just want to take one quick moment because I disagree with his reading of the Detola case. That was a case in which the severing of a causal connection was upheld by the appellate court. In that particular case, you have an accident that takes place and then a return to work about two weeks later. You have MMI about three months after that. And then seven months down the road after MMI, you have a separate unrelated accident that has nothing to do with work. And in that case, the commission denied causal connection and the appellate court upheld it. If you read the case closely, it doesn't appear that there was any testimony on causation either way. But that's quite different from the case that we have here. Because the only doctors who have testified in this particular case have testified that the work accident at all times remained a contributing factor. I think my opponent's focus is misplaced. He wants to talk about the catastrophic nature of the motorcycle accident, the fact that it's a small miracle that Mr. Conklin is still alive. That's the term he used in his brief. I chuckled because I don't know what the difference is between a small miracle and a big miracle. But in any event, he's focusing on the nature of the motorcycle accident instead of where he should be focusing, which is on whether or not the work accident remains a contributing factor. And on that point, there is unanimity of medical sentiment. And whenever we have unanimity of medical sentiment, the commission does not have license to do whatever they want. And that's what happened on the first commission decision. Judge Novak didn't just rubber stamp a reversal. She wrote a 22-page, very detailed decision. That decision, I hasten to add, was not all favorable to me. In that decision, she confirmed the commission's denial of causal connection as it related to Mr. Conklin's shoulder injury and said that the evidence really wasn't significantly overwhelming, that that shoulder injury remained a factor after the motorcycle accident. But the low back is different. Judge Novak's decision was very well-reasoned. And frankly, your honors, I will concede to the court that if Dr. Mark Levin, the IME physician, had even opined that the work accident was no longer a factor after the motorcycle accident, we would not be here today. Because even a single doctor's opinion would have given the commission license to rely on that opinion in denying benefits. But they can't ignore unanimous medical sentiment. And that's why this case should be, the circuit court's decision should be confirmed. I think the Vogel case says it all. And if you look closely at the Vogel case, the traumatic injury that poor Mr. Vogel sustained after the work injury was much more profound than here. Mr. Vogel was nearly healed from a cervical fusion. By his own testimony, he had no pain. And then he has not one, not two, but three auto accidents, which gives rise to the question of why he should have been driving. And he has to go in and he has to have more neck surgery and everything else. The other significant thing about the Vogel case is that the commission ruled against Mr. Vogel. So even in the face of that manifest weight standard, this court said, no, as long as the work accident remains a factor, that's the test. That's what we have here. The circuit court should be affirmed. Thank you. Counsel? Counsel, you may respond or reply. For reference, Your Honors, again, I don't have the pagination from your record, but I do have page 22 on Dr. Bernstein's testimony, where he agrees that there's a significant increase of low back complaints. And then Dr. Liestema's testimony is page 27 of his testimony, and that's the pagination from the court report, or not your pagination. Forgive me, I don't have that. With regard to my citation, so the basis for reversal of the circuit court and reinstatement of original circuit court decision. The one other comment I want to make is, again, draw a distinction between Vogel. In this case, with regard to a worsening, not just a setback, I think it's very significant. And to sum up, the commission has discretion to review all facts, including all those ER records that show how bad this gentleman was hurt in the ER, and draw a conclusion. That is their discretion. It is not the discretion of Judge Novak to reconsider all those facts and draw the opposite conclusion. I think that is what she had done. And for that reason, I think it was erroneous. And the original commission decision should be reinstated. Thank you. Thank you, counsel. This matter to be taken under advisement.